## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:19-CV-804-CHL

**LAWRENCE C. HORTON,**                                                                                             **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                             **Defendant.**

### MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint (DN 1) filed by Plaintiff, Lawrence C. Horton ("Horton"). In his Complaint, Horton seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). Horton filed a Motion for Summary Judgment and a Fact and Law Summary on April 6, 2020. (DN 11.) The Commissioner filed a Fact and Law Summary in response on July 6, 2020. (DN 16.)

The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10.) Therefore, this matter is ripe for review. For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**, and Horton's Motion for Summary Judgment (DN 11) is **DENIED**.

### I.   BACKGROUND

On August 28, 2015, Horton protectively filed an application for disability insurance benefits ("DIB") alleging disability beginning on November 28, 2014. (R. at 201-08.) On June 12, 2018, Administrative Law Judge Steven Collins (the "ALJ") conducted a hearing on Horton's application. (*Id.* at 26-63.) In a decision dated November 19, 2018, the ALJ proceeded through the five-step evaluation process promulgated by the Commissioner to determine whether an

individual claimant is disabled. (*Id.* at 9-25.) Through that five-step analysis, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019. (*Id.* at 14.)

2. The claimant has not engaged in substantial gainful activity since November 28, 2014, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: compression fracture, meniscus tear, and cellulitis. (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally lift/carry 20 pounds, and frequently lift/carry 10 pounds. He can stand, walk, and sit each for 6 of 8 hours per day. He can occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally reach overhead with his bilateral upper extremities. He should have no concentrated exposure to vibrations or hazards such as dangerous moving machinery or unprotected heights. (*Id.* at 15)

6. The claimant is unable to perform any past relevant work. (*Id.* at 17.)

7. The claimant was born on February 11, 1959 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date. (*Id*. at 18.)

8. The claimant has at least a high school education and is able to communicate in English. (*Id*.)

9. The claimant has acquired work skills from past relevant work. (*Id*.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (*Id*.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 28, 2014, through the date of this decision. (*Id*. at 19.)

Horton subsequently requested an appeal to the Appeals Council, which denied his request for review on October 16, 2019. (*Id.* at 1-6, 196-200.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2020); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Horton is presumed to have received that decision five days later, on October 21, 2019. 20 C.F.R. § 422.210(c). Accordingly, Horton timely filed this action on November 5, 2019. (DN 1.)

## II. DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. § 401-434. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2020).

### A. Standard of Review

The Court is permitted to review final decisions rendered by the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th

Cir. 1989) (holding that if the Court determines the ALJ's decision was supported by substantial evidence, the Court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes a lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence contained within the record. *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011).

### B.  Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 404.1520 (2020). In summary, the evaluation process works as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at Step Five to prove that other work is available that the claimant is capable of

performing. *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### C. Horton's Contentions

Horton alleged the ALJ erred in three ways. (DN 11-1, at PageID #1050-57.) Horton argued that the ALJ erred in (1) not affording controlling weight to the opinion of his treating physician, (2) failing to adequately develop the record regarding his daily activities, and (3) failing to consider all evidence in determining Horton's RFC. (*Id.*) The Court will assess each of these arguments below.

#### 1. Treating Physician Rule

Horton contended that the ALJ failed to properly apply the treating physician rule. (DN 11-1, at PageID # 1050-53.) Specifically, Horton argued that the ALJ failed to give controlling weight to the medical opinion of his primary care physician Dr. Stephen Roszell ("Dr. Roszell"). (*Id.* at 1052.)

Generally, an ALJ must give greater weight to the medical opinions of treating sources than to non-treating sources.[1] 20 C.F.R. § 404.1527(c)(2) (2020). Treating physicians' opinions carry more weight because the opinions likely provide "a detailed, longitudinal picture" of the claimant's medical impairments that cannot be obtained solely from objective medical findings or from reports of consultants' examinations. *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004). An ALJ must give a treating source opinion concerning the nature and severity of the claimant's impairment controlling weight if the opinion is well-supported by medically acceptable

---

[1] The new regulations for evaluating opinion evidence do not apply to Horton's claim because his application was filed before March 27, 2017. *Compare* 20 C.F.R. 404.1527(c)(2) (2020) ("For claims filed before March 27, 2017, the rules in this section apply."), *with* 20 C.F.R. § 404.1520c (2020) ("For claims filed on or after March 27, 2017, the rules in this section apply.").

clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). Opinions based on the claimant's subjective complaints as opposed to objective medical evidence may properly be denied controlling weight. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 257 (6th Cir. 2016).

However, for the treating physician rule to be applicable, a treating physician must provide an *opinion*. 20 C.F.R. § 404.1527(a)(2) defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including symptoms, diagnosis, and prognosis, what a claimant can still do despite impairments, and a claimant's physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); *see also Dunlap v. Comm'r of Soc. Sec.,* 509 F. App'x 472, 476 (6th Cir. 2012). Records containing notations, such as treatment notes only, are not medical opinions, and therefore, the treating physician rule does not apply to them. *Messina v. Comm'r of Soc. Sec.*, No. 1:12cv95, 2013 WL 1196597, at *1 (S.D. Ohio Mar. 25, 2013).

While Horton correctly asserts that Dr. Roszell is a treating source (DN 11-1, at PageID # 1051), he fails to establish that the note regarding Horton's limitation of "[s]tanding, sitting, working limited to 45-75 minutes[,] [t]akes 2-3 hours to reset" is a medical opinion (R. at 953). In a medical record regarding Horton's May 23, 2018, visit to Dr. Roszell, under the heading "HPI," Dr. Roszell writes:

> Here after 6 months
>
> Disability hearing shortly for T8 Compression Fracture 2012
>
> Primary problem is back pain 3-7/10. Splinting (difficulty breathing) when flares. Standing, sitting, working limited to 45-75 minutes. Takes 2-3 hours to reset. No radiation.
>
> Stamina and ability to work is his major problem.

> Occasionally drops things, though this is a T8 Injury.
>
> . . .
>
> Weight down again for a steady drop over 4 years. He associates this with activity and better diet.

(*Id.*) Other courts have found that statements made under the HPI section were "narrative description[s] of [a] plaintiff's subjective complaints and symptoms," not medical opinions. *See McCready v. Comm'r of Soc. Sec.*, No. 10-13893, 2012 WL 1060088, at *8 (E.D. Mich. Mar. 2. 2012), *report and recommendation adopted*, 2012 WL 1059747, at *1 (E.D. Mich. Mar. 29, 2012). Here, when considered in context, the medical record supports that the portion emphasized by Horton was his own description of his limitations that Dr. Roszell noted for the record, not Dr. Roszell's adoption of the same. As the notation was not a medical opinion by Dr. Roszell, it does not trigger the application of the treating physician rule. Thus, the ALJ did not err in failing to apply the rule to the statement identified by Horton.

## 2. Failure to Adequately Develop the Record

Horton argued that the ALJ violated his duty to develop the record because the details of a trip to Costa Rica and specific details about Horton's wood chopping considered by the ALJ required "further inquiry." (DN 11, at PageID #1053.) It is well-established that an ALJ has a duty to develop the record. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). Further, an ALJ has a heightened duty to develop the record "when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures."[2] *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003); *see also Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). Pursuant to 20 C.F.R. § 404.1520b(c)(2), if after reviewing the evidence of record, the ALJ finds it to be

---

[2] The ALJ did not have a heightened duty in this case because Horton was represented.

7

insufficient or inconsistent, the ALJ may "determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. § 404.1520b(c) (2016). However, an ALJ is not bound to resolve the inconsistency or insufficiency in a particular manner. *Id.* "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

In his RFC determination and assessment of Horton's statements concerning the intensity, persistence, and limiting of effects of his symptoms, the ALJ noted that Horton reported he was going to Costa Rica in April 2016 to his provider and told his massage therapist in September 2017 that he was sore because he had been chopping wood the day before. (R. at 16-17, 887, 989.) The ALJ later observed, "Given his activities of daily living include foreign travel and chopping wood, as well as walking 5 miles per day, it is clear that neither problem [*sic*] are preventing him from sometimes doing very strenuous activity that includes sitting for long periods on a plane or using a full range of his upper and lower body." (*Id.* at 17.) Horton argued that if asked, he would have told the ALJ that he used a wood chopping machine to dispute that it constitutes strenuous activity and the ALJ should have asked certain question regarding his trip to Costa Rica including the length of the layover and whether he walked around during the flight.[3] (DN 11, at PageID #1055.) Horton does not explain how these items created an inconsistency in the record that the ALJ should have been alerted to resolve given the other evidence in the record cited by the ALJ in support of Horton's physical abilities and limitations and cites no authority to support that the ALJ's use of these facts in assessing the intensity, persistence, and limiting effects of his symptoms was improper under the circumstances. A claimant's daily activities is one of regulatory factors listed as relevant to the ALJ's consideration of a claimant's complaint of pain. *See* 20 C.F.R. §

---

[3] Notably, Horton provides no detail regarding what further investigation regarding his trip to Costa Rica would have yielded as to the answers to these questions.

8

404.1529(c)(3)(i) (2016). Under these circumstances, the Court finds that Horton has failed to demonstrate that the ALJ failed in his duty to develop the record.

### 3. Horton's RFC

Finally, Horton asserted that the ALJ's RFC finding was not accurate because the ALJ failed to consider all available evidence. (DN 11-1, at PageID # 1055-57.) Specifically, Horton argued that the ALJ failed to give weight to the physical limitations described in the HPI section of Dr. Roszell's treatment note. (*Id.*)

A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations . . . based on all relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1) (2020). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record. *Id.* Thus, in making the RFC finding, the ALJ must assign weight to the medical source statements in the record and consider the descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends. 20 C.F.R. § 404.1545(a)(3).

Here, the ALJ found that Horton maintains the RFC to perform light work with occasional lifting and carrying of up to twenty pounds and frequent lifting and carrying of up to ten pounds. (R. at 15.) Additionally, the ALJ found that Horton could stand, walk, and sit with normal breaks for about six hours in an eight-hour workday. (*Id.*) He can "occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally reach overhead with his bilateral upper extremities." (*Id.*) In support of his RFC finding, the ALJ highlighted Horton's progress in physical therapy. (*Id.* at 17.) After his 2012 back injury, Horton was discharged from physical therapy once he reported that he "was comfortable with all work and home-relative activity" with "aching in his middle back." (*Id.* at 16.) He did not again see a surgical specialist

9

regarding his back from April 2013 until February 2015 when his back pain was aggravated by a lifting injury. (*Id.*) This resulted in another round of physical therapy until he was discharged with "mild-to-moderate limitations." (*Id.*) Specifically, independent examiner Dr. Billkey assessed that Horton could lift up to forty pounds without aggravating his injury at that point. (*Id.*) In 2017, Horton was diagnosed with cellulitis after going to the emergency room with leg pain and returned several days later when his wound was not healing, but he was prescribed a topical ointment and discharged the same day; there is no indication in the record that the cellulitis has presented a continuing problem. (*Id.* at 17.) After his 2018 arthroscopic surgery, Horton was discharged from physical therapy once his knee "was fully functional at full strength and with only minor pain." (*Id.*) The ALJ also cited in support to the opinions of the state agency physicians. (*Id.* at 17.)

The ALJ considered Horton's daily activities and noted that they were inconsistent with his allegations of limitations. (*Id.*) For example, Horton reported to his massage therapist that he was walking five miles per day in March 2018. (*Id.*) Additionally, Horton reported on one occasion that he was in pain because "he had been chopping wood." (*Id.*) Horton also took a trip to Costa Rica despite his claims that sitting for extended periods is painful for him. (*Id.* at 16.) An ALJ may consider a claimant's "household and social activities" in evaluating the claimant's assertions of pain and other limitations. *Walters*, 127 F.3d at 532 ; 20 C.F.R. § 404.1529(c)(3). When an ALJ is faced with contradictions between claimant's testimony and the medical record, "[d]iscounting credibility to a certain degree is appropriate." *Walters* 127 F.3d at 531. It was appropriate for the ALJ to discount Horton's subjective allegations about his limitations because they were inconsistent with the medical opinions and evidence in the record and Horton's daily activities.

This Court in reviewing the ALJ's decision does not decide if there was evidence in favor of Horton's version of his RFC. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alteration in original) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). The Court may decide only whether there is substantial evidence to support the ALJ's decision. *Blakley*, 581 F.3d at 406. If substantial evidence is found to support the ALJ's decision, the Court will defer to that decision even if the record contains substantial evidence to support the opposite conclusion. *Id.* Based on the foregoing, the Court holds that the ALJ supported his RFC finding with substantial evidence.

### III. CONCLUSION AND ORDER

For the reasons set forth above, and the Court being otherwise sufficiently advised, IT IS HEREBY ORDERED that the final decision of the Commissioner of Social Security is **AFFIRMED**, and Horton's Motion for Summary Judgment (DN 11) is **DENIED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of Record
March 22, 2021